UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

SHELTON C. JONES,                                    UNDER THE CIVIL RIGHTS ACTS
                                                     42 U.S.C. § 1983

                    -against-                        13 CIV. 0929 (ALC)(DCF)

ADAM KREITZBERG, SHIELD No. 26963;
ALEXANDER SANTIAGO, No. 29616; THE                   JURY TRIAL DEMANDED
CITY OF NEW YORK, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES
-------------------------------------------------------X

RECEIVED SDNY PRO SE OFFICE
2015 APR 28 P 12: 1

### AMENDED COMPLAINT

Plaintiff, Shelton C. Jones, *pro-se* is the complaint and states the following:

    1.  Plaintiff Shelton C. Jones, identification number 11 B 0687 is currently confined at the

Orleans Correctional Facility, 3531 Gaines Basin Road, Albion New York 14411-9199.

### JURISDICTION

    2.  The Jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C.A.

Sec. 1983, 28 U.S.C.A. §§ 1331 and 1343(a), and the Constitution of the United States, and the

Laws of the State of New York.

### VENUE

    3.  Venue is appropriate in the Southern District pursuant to 28 U.S.C.A. Sec. 1391 (b) as

all Defendants resides in addresses located in this District.

### DEFENDANTS

    4.  At all relevant times to this matter, Defendant City of New York Police Officer

Alexander Santiago, No. 29616 of the New York City Police Department 41st precinct, 1035

Longwood Avenue, Bronx New York 10459, and Adam Kreitzberg No. 26963 of the New York

City Police Department 41st precinct, 1035 Longwood Avenue, Bronx New York 10459 were

duly appointed and sworn police officers of the City of New York in State New York.   The

Defendant Officers are being sued in their Official and individual capacities.

5.  The Defendant City of New York is a duly incorporated municipal corporation and is

the employer and principal of the Defendant Officers.

6.  At all times relevant to this Complaint, the Defendant Officers were acting under the

color of state law, ordinance and/or regulation, statute, custom and usage of the City of New

York, State of New York.

### FACTS COMMON TO ALL COUNTS

7.  On April 12, 2008, at or around 8:00 p.m., Plaintiff was having dinner at a Chinese

food restaurant located at 163rd street in the Bronx, between Kelly Street and Intervale Avenue.

8.  At or around 8:10 p.m., on April 12, 2008, in the same location where Plaintiff was

having dinner, Defendant Adam Kreitzberg, and Defendant Alexander Santiago were patrolling

the area of 163rd street between Kelly Street and Intervale Avenue, in search of a suspect who

allegedly stolen a cell phone.

9.  Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago entered the

Chinese food restaurant where Plaintiff was having dinner, and started questioning customers

about a cell phone robbery that took place in the area.

10. Defendant Officers Adam Kreitzberg, and Defendant Alexander Santiago were not

getting any leads to their investigation, and from their facial expressions, they were getting

irritated, and they started becoming very aggressive with their questioning, and started harassing

the customers.

11. Defendant Officers Adam Kreitzberg, and Defendant Alexander Santiago's

harassment consisted of grabbing customers forcefully, placing customers on the wall of the

2

restaurant and searching them illegally.   Defendant Officers Adam Kreitzberg, and Defendant

Alexander Santiago harassed people to the point they left before they ordered/and or before they

was able to receive their orders.

12. Defendant Officers Adam Kreitzberg, and Defendant Alexander Santiago worked

their way through the restaurant to where Plaintiff was seated eating his dinner.

13. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago asked

Plaintiff questions about a robbery of a cell phone that took place in the area.   Plaintiff informed

both Officers that he did not know anything about a robbery of a cell phone.

14. Defendant Alexander Santiago then ordered Plaintiff to drop his fork, stand up, and

place his hands on the wall.   Plaintiff refused, and stated that he did nothing wrong and will not

allow such a search of his person to take place.

15. Defendant Alexander Santiago then immediately grabbed Plaintiff by the shirt with

both hands and threw Plaintiff on the wall.   Plaintiff pleaded to Defendant Alexander Santiago

repeatedly that he has done nothing wrong, Defendant Alexander Santiago told Plaintiff to shut

the fuck up and keep his hands on the wall.

16. Defendant Santiago started searching through Plaintiff pockets, shoes, and mouth.

Defendant Santiago patted the Plaintiff's whole body down vigorously and viciously.   Nothing

illegally found on Plaintiff person.

17. While Plaintiff was being searched, Defendant Adam Kreitzberg was searching the

Chinese food restaurant.   Adam Kreitzberg searched the garbage, the Plaintiff's food, the

window, underneath the seats, and table of the restaurant.

18. After Adam Kreitzberg finished his search he grabbed Plaintiff by the shoulder and

spun him around showing Plaintiff a brown paper bag.

3

19. Defendant Adam Kreitzberg asked Plaintiff "do you know what this is in the bag?" Plaintiff stated "no", and then Defendant Adam Kreitzberg told Defendant Alexander Santiago to arrest the Plaintiff.

20. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago escorted Plaintiff out of the restaurant and told Plaintiff that he was being arrested for Criminal Sale and Criminal Possession of a Controlled Substance.

21. Plaintiff was then taken to an unmarked police car, placed in, and was transported to the 41st precinct.

22. At the 41st precinct, Plaintiff was stripped searched, and cavity searched by Defendant Alexander Santiago, after the search Plaintiff was seated in the interrogation room.

23. In the interrogation room, Plaintiff was asked numerous of questions about a robbery of a cell phone.   Plaintiff informed Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago that he knew nothing about a robbery of a cell phone, and that he was innocent of any Criminal Possession or Sale of a Controlled Substance.

24. Defendant Kreitzberg than told Plaintiff that if he did not give them information about the robbery he would be going to jail, for Criminal Possession and Criminal Sale of a Controlled Substance in the Third Degree.

25. Plaintiff pleaded his innocence again, and informed Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago that he has done nothing wrong.   Defendant Kreitzberg then stated, since you know nothing you are going to jail.   Defendant Kreitzberg then told Defendant Santiago to lock the Plaintiff up and start the paperwork.

26. In Defendants Santiago Arrest Report he stated that he observed Plaintiff pass an object to an individual, and seen that individual pass Plaintiff U.S. currency.

4

27. Plaintiff was taken to a prison cell where he stood for approximately 2 to 3 hours. Plaintiff was then taken from the prison cell, and was being escorted by Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago to central booking, on 161st in the Bronx. There Plaintiff was processed, and waited to be seen by a Judge.

28. Plaintiff was seen by a Judge where he was officially charged with Criminal Sale of a Controlled Substance, and Criminal Possession of a Controlled Substance in the Third Degree. Plaintiff was asked how he pleaded, Plaintiff stated "not guilty", and then from there the Judge set bail at $1,500, and court was adjourned for later proceedings.

29. Plaintiff was then taken over to the Bronx House Holding Jail, where he awaited his next court appearance, for grand jury proceeding.

30. On or around April 18, 2008, Plaintiff was held for grand jury proceedings, where he testified and leaded his innocence.   In substance, Plaintiff was asked questions about, did he see a bike.   Plaintiff replied no.   Did you shake hands with anyone?   Plaintiff replied yes, with a couple of people he knew from the area, and then displayed how he shook hands with other people, by grabbing and shaking his hands together.

31. Defendant Santiago also testified.   In relevance he state that he seen Pliaintiff reach underneath the restaurant table, and then placed a little white wax baggie in another individuals hands.   Then the individual reach in his pocket and handed Plaintiff U.S. currency.

32. Plaintiff was then taken back to the Bronx House Holding Jail, and awaited the grand jury's response.   Plaintiff discovered that he was indeed indicted by the grand jury, on or around April 19, 2008.

33. At or around May 4, 2008, Plaintiff was released from the Bronx House Holding Jail, due to bail posted by Plaintiff's mother.

34. While out on bail Plaintiff went back to his job at Midtown Moving Inc., and part time at a barber shop.   While saving up money, and some help from Plaintiff's mother he was able to retain a defense attorney named Steven H. Goldman, the retainer was $10,000.

35. Attorney Goldman quickly placed in an omnibus motion requesting hearings on certain issues.   Plaintiff was granted his hearing to suppress the evidence, of a statement that Defendant Santiago said Plaintiff made when being arrested, which was "This is the first time police officers caught product on me".

36. At the suppression hearing Defendant Santiago testified, and stated exactly what he said at the grand jury, but just in detail.   He stated that he was approximately 30 to 50 feet away from where Plaintiff was seated in the restaurant, and observed Plaintiff pass a small object to another individual, and in return that individual passed Plaintiff U.S. currency.   Then Defendant Santiago stated he arrested Plaintiff and Plaintiff stated, "This is the first time police officers caught product on me".

37. Plaintiff suppression hearing was denied, and Plaintiff's alleged statement was able to proceed to Plaintiff's trial.

38. On November 19, 2009, Plaintiff was arrest for unrelated charges in the County of Delaware.

39. On or around December 16, 2009, Plaintiff was extradited to the Bronx County Supreme Court for his scheduled Court appearance.

40. At the Court proceeding Plaintiff was remanded, where his bail was revoked, and a new bail set at $10,000 cash no bond.   Plaintiff was then taken back to the Bronx House Holding Jail.

41. At the Bronx House Holding Jail, Plaintiff got into a physical altercation with three other individuals and had medical attention, then was taken from there to Riker's Island.

42. On March 3, 2010, Plaintiff's trial started with Defendant Santiago being the People's only witness.

43. Defendant Santiago testified on direct examination in sum that, he and his partner were in the area of 163rd Street on the corner of Intervale Avenue.  Defendant Santiago stated that his car was pointed in the opposite direction of the restaurant where Plaintiff was seated, and he had to turn all the way around in his car and looked over his shoulder and seen Plaintiff pass a small white wax baggie to another individual.  Then he seen the individual pass Plaintiff U.S. currency.  Defendant Santiago also testified that he was trained to know when a drug deal occurred, as he participated in over 50 drug buys, and when Plaintiff touched hands with another individual he believed he seen a drug transaction.

44. Then Defendant Santiago then stated that he and Defendant Kreitzberg enter the restaurant searched the Plaintiff arrested the Plaintiff and then search the restaurant, where they discovered underneath the table in the window a small brown bag, which contained numerous of little white wax biggies.

45. On cross-examination Defendant stated in sum that, he was unable to see if Plaintiff passed any object or controlled substance in a wax biggie, from where he was at he stated he was unable to see.  He also stated that he did not see any U.S. currency being given to Plaintiff, and that it could have been a green paper of green flyer, and that where he discovered the drugs was not where Plaintiff was seated or where Plaintiff reached underneath the table, as he stated Plaintiff could have been reaching to scratch his leg.

46. Plaintiff hired a Private Investigator, who testified at Plaintiff's trial and stated that from the description of where the Officer said they were at it was approximately, 100 feet away from the restaurant.   The investigator supplied pictures of where the Officers were, and displayed his measuring tool that calculated the 100 feet.

47. On March 7, 2010, around 11:00 a.m. the case was given to the jury for their deliberation.   At or around 3:00 p.m. the jury had reached a verdict, where Plaintiff was acquitted of charges.

## PLAINTIFF SEEKS RELIEF ON THESE COUNTS

### *FIRST CAUSE OF ACTION*

### (42 U.S.C. § 1983; *There Was No Probable Cause For The Defendants Actions; All Individual Police Defendants*)

48. Plaintiff realleges each of the allegations set forth in Paragraphs 1-47.

49. Defendant Santiago was the arresting Officer in this case, and from his testimony at the Plaintiff's trial, it proved that there was no probable cause for the Plaintiff's arrest.

50. It was discovered that Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago were a 100 feet away from Plaintiff, and did not see Plaintiff pass any object, controlled substance, or any little wax baggie.

51. Defendant Santiago stated that from where he was at, he was unable to see any transaction.   That he did not see an individual pass Plaintiff U.S. currency, and that what he believes to be U.S. currency could have been a green piece of paper or a green flyer.

52. From Defendant Santiago's trial testimony Plaintiff did not give any suspicion of criminal activity, and definitely was not seen doing any criminal activity.

53. Even though Plaintiff was not seen doing any criminal activity, and there was no reason for Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago to arrest

8

Plaintiff, they legally searched, planted drugs on Plaintiff, and falsely arrested and falsely imprisoned Plaintiff on false charges.   They arrest Plaintiff without a warrant, at which a warrantless arrest needs probable cause, which Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago did not have.

54. The warrantless arrest violated Plaintiff's <u>U.S.C.A. Constitution Amendment 4</u> <u>Rights</u>.

### SECOND CAUSE OF ACTION

### ( <u>42 U.S.C. § 1983</u>; *Conspiracy: Police Defendants Conspired Together To Bring False Charges Against The Plaintiff; All Individual Police Defendants)*

55. Plaintiff realleges each of the allegations set forth in Paragraphs 1-54.

56. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, agreed to violate the Plaintiff's Civil Rights, as neither Defendant seen Plaintiff act in any criminal manner, but agreed to arrest Plaintiff, and falsely charge Plaintiff with criminal sale and criminal possession of a controlled substance.

57. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, agreed to plant drugs on Plaintiff, agreed to falsely imprison Plaintiff, they agreed to pass this false information to the District Attorney, which in turn brought malicious charges against Plaintiff.

58. They conspired with each other because Plaintiff did not have information about a robbery.   They shared the same intentions to malicious harm Plaintiff with violating the Plaintiff's Civil Rights.   Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, agreed to commit an unlawful act, and or to inflict a wrong against the Plaintiff, and an overt act resulted in damages.

59. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, furthered their conspiracy, and tried to cover-up material facts.   Defendant Santiago stated in his Police

Report that he observed Plaintiff sale a controlled substance, and possessed a controlled substance.

60. Defendant Santiago reiterated his statement in his Police Report in Plaintiff's grand jury. He stated to the jury that he observed Plaintiff pass an object to another individual, and that same individual passed Plaintiff U.S. currency. Plaintiff was indicted from such testimony.

61. At Plaintiff's pre-trial hearing to suppress a statement and the physical evidence. Defendant Santiago stated that, he was 50 to 60 feet away from the Chinese take-out restaurant. That he was able to see into the interior of the restaurant through several large windows on the buildings façade. He seen an individual approached Plaintiff who was seated at a table only. After a brief conversation, the individual took out money from his front right pocket and gave it to Plaintiff. He seen Plaintiff reached under the table and then handed the individual a small object over the table. Defendant Santiago stated that based on his training and experience, he concluded that he just observed a narcotics transaction.

62. From Defendant Santiago's testimony Judge Analisa Torres, credited Defendant Santiago testimony, and stated that "Santiago's conclusion, based on his training and experience, that a drug transaction had occurred when Plaintiff, after a brief conversation with the individual exchanged a small object for money, in a drug-prone neighborhood, gave rise to probable cause for Plaintiff's arrest. At which Judge Torres denied Plaintiff's motion.

63. At Plaintiff's trial on direct-examination Defendant Santiago restated what he said in his Police Report, to the District Attorney, to the grand jury, and at Plaintiff's pre-trial hearing. That he observed an individual pass Plaintiff U.S. currency, and then seen Plaintiff reach underneath the table, and pass a small object to the individual.

10

64. On cross-examination Defendant Santiago was shown pictures of his location where he allegedly observed Plaintiff sale a controlled substance.   It was discovered that Defendant Santiago was 100 feet away from the restaurant, and not 50 0r 60 feet, which was alleged by Defendant Santiago.

65. It was also discovered that from the distance away Defendant Santiago stated that he was unable to see any object being passed by Plaintiff to the individual.   Defendant Santiago was also unable to see any U.S. currency being given to Plaintiff from the individual.   Defendant Santiago stated that what he believed to be U.S. currency could have been a green flyer, or green piece of paper, and not U.S. currency, and that where the drugs were found underneath the table, was not where Plaintiff reached under the table.

66. Defendant Officer Adam Kreitzberg and Defendant Alexander Santiago cover-up was exposed on cross-examination, as Defendant Santiago was unable to lie about what happen. Defendant Officer Adam Kreitzberg and Defendant Alexander Santiago falsely arrested Plaintiff.

67. Defendant Officer Adam Kreitzberg and Defendant Alexander Santiago conspired together to falsely charge, falsely arrest, falsely imprison, maliciously prosecute, and deny Plaintiff his right to a fair trial.   Plaintiff's constitutional rights that was violated by Defendant Officer Adam Kreitzberg and Defendant Alexander Santiago for this act is, U.S.C.A. Constitution Amendment 4th, 5th, 6th, 8th, and 14th, as Defendants were under color of state law.

### THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983; and New York State Constitution Claim; *Malicious Prosecution: Plaintiff Was Maliciously Prosecuted By Defendants; All Individual Police Defendants)*

68. Plaintiff realleges each of the allegations set forth in paragraphs 1-67.

69. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago initiated criminal proceedings against the Plaintiff.   The proceedings ended in Plaintiff's favor, and the proceeding was initiated without probable cause.

70. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, acted maliciously for a purpose other than bringing the Plaintiff to justice for a crime he committed, and due to their malicious acts, Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings.

71. Plaintiff was in a restaurant having dinner, when Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago approached Plaintiff with questions about a robbery.

72. Plaintiff was unable to give Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago information about the robbery, and then they got angry, threw Plaintiff on the wall, searched Plaintiff, planted drugs on Plaintiff, and then arrested Plaintiff.

73. Plaintiff was taken to the 41st precinct, where he was interrogated about a robbery, but still was unable to provide Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago with information about the robbery.

74. Defendant Kreitzberg then stated since you know nothing you're going to jail for criminal sale and possession of a controlled substance, and then told Defendant Santiago to lock Plaintiff up and start the paperwork.

75. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, then wrote a false Police Report, and then gave the District Attorney false information about the Plaintiff committing a crime.

76. Plaintiff was bond to attend numerous of court dates included trial, on Defendant
Officers Adam Kreitzberg and Defendant Alexander Santiago false Police Reports, and
malicious acts.

77. At Plaintiff trial on cross-examination Defense Attorney Mr. Goldman, displayed
pictures of Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago position
when Defendant Santiago allegedly seen Plaintiff sale a controlled substance.   It was 100 feet
away and not 50 to 60 feet.

78. Mr. Goldman, asked Defendant Santiago questions about his visual capabilities, and
if he had any binoculars.   Defendant Santiago stated that he did not have any binoculars, and in
fact had to look over his shoulder, and through his back window in his patrol car, when he
allegedly seen Plaintiff sale a controlled substance.

79. From there Mr. Goldman asked Defendant Santiago did he see Plaintiff pass an
individual an object.   He replied no, and then Mr. Goldman asked the U.S. currency that you
thought you saw could it have been a green paper or a flyer.   Defendant Santiago replied yes,
that it could have been a green paper or green flyer, and not U.S. currency.

80. Defendant Santiago never seen Plaintiff conduct in any criminal activity, therefore
Defendant Santiago lied to the grand jury.   Probable cause to pursue a prosecution is presumed
when an individual is indicted by a grand jury.   This presumption is rebuttable only by evidence
that the indictment was procured by fraud, perjury, the suppression of evidence or other police
conduct undertaken in bad faith.

81. Since Defendant Santiago presented fraud, and perjured testimony to the grand jury,
and Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago conduct was in bad

13

faith their presumption of probable cause has been rebutted, and Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago did not have probable cause for Plaintiff's arrest.

82. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago commenced and continued a criminal proceeding against Plaintiff, Plaintiff was acquitted of all charges, because Plaintiff grand jury indictment was procured by fraud, perjury, and bad faith the presumption of probable cause has been rebutted, and Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago commenced this criminal proceeding with nothing but pure malice.

83. By reason of the foregoing, all Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages, as Plaintiff sustained damages of his U.S.C.A. Constitutional Amendment Rights 4th and 14th, and New York State Law.

### FOURTH CAUSE OF ACTION

#### (42 U.S.C. § 1983; Denial Of Due Process And The Right To A Fair Trial: Plaintiff Was Denied His Right To A Fair Trial; All Individual Police Defendants)

84. Plaintiff realleges each of the allegations set forth in paragraphs 1-83.

85. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago supplied the District Attorney with knowingly false information.   Defendant Santiago then stated this false information at the Plaintiff's grand jury, and at the Plaintiff's trial to try to influence the jury's decision.

86. Due to Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago denying Plaintiff his right to a fair trial Plaintiff suffered a deprivation of liberty as a result and prosecution on false criminal charges.   Plaintiff U.S.C.A. Constitutional Amendment 6 was violated; this violation was discovered at Plaintiff's trial.

87. By reason of the foregoing, all Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.   Defendants did act under the color of state law.

### FIFTH CAUSE OF ACTION

**(Monell/42 U.S.C. § 1983; New York State Constitution Claim; *Claim Against Defendant City Of New York For The Actions Of The NYPD And For Negligent Hiring, Training, Supervising, Discipline, And Superior Liability*)**

88. Plaintiff realleges each of the allegations set forth in paragraphs 1-87.

89. It was the policy and practice of the City of New York to employ certain police officers, including Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago.

90. It was the policy and practice of the City of New York to authorize officers, to cover up warrantless arrest without probable cause, to conspire with each other to bring false charges, to malicious prosecute on false charges, and to deny a right to a fair trial.   This policy and practice of the City of New York encouraged and caused constitutional violations by Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago police officers of the City of New York, including the violation of Plaintiff's constitutional rights by Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago.

91. This claim against the City of New York arises from their official municipal policy and or custom.   This municipality's legislative body, and or authorized decision maker has intentionally deprived Plaintiff of his federally protected rights.

92. The City failed to train, supervise, and was negligent in hiring Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago.

93. The previously mentioned policies, procedures, regulation, practices and/or customs (including the failure to properly instruct, train, supervise, and/or discipline employees with

regard thereto) were implemented or tolerated by policymaking officials for the Defendant City

of New York, including but not limited to, the New York City Police Commissioner, who knew:

a) To a moral certainty that such policies, procedures, regulations, practices and/or customs

concern issues that regularly arise in the investigation and prosecution of criminal cases;

b) Either that such issues present police employees with difficult choices of the sort that

instruction, training and/or supervision will make less difficult, or that the need for

further instruction, training, supervision and/or discipline was demonstrated by the

incentives that police employees have to make the wrong choice in such situation; and

c) That the wrong choice by such employees concerning such issues will frequently cause

the deprivation of the constitutional rights of criminal suspects or defendants and cause

them constitutional injury.

94. The aforementioned policymaker officials had notice of the need to properly instruct,

train, supervise and/or discipline employees with regard to their aforementioned constitutional

obligations based upon, among other circumstance:

a) Numerous credible allegations, many substantiated by judicial decisions, that police

officers had no probable cause for their action, and maliciously prosecuted

individuals suspects, and conspired with each other to wrongly try and justified their

false charges, cover-up material facts, and denied individuals their right to a fair trial,

by using fabricating evidence and false testimony.

b) Numerous civil lawsuits, some of which resulted in substantial civil settlements,

alleging that police had no probable cause, falsified, exaggerated, or withheld

evidence, thereby improperly causing unlawful harm injuries to individuals suspected

of crimes, which made municipality liable.  (see some listing of those law suits:

16

Poventud v. City of New York, 2014 WL 182313  [2014]; Cash v. County of Erie, 654 F.3d 324  [2014]; Walker v. City of New York, 974 F.2d 293  [1992])

c) The inherent obviousness of the need to train, supervise and discipline police officers in such obligation to counteract the pressure on officers to close cases and to obtain convictions and the powerful incentives they have to ignore, discard, fail to record, and fail to disclose evidence favoring a criminal suspect or defendant.

95. Under the principle of municipal liability for federal civil rights violations, the City of New York, and either the City's Police Commissioner (or his authorized delegates), had (and has) final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements with respect to giving truthful statements and testimony, not conspiring to charging individuals falsely and coving up their false evidence, to have probable cause to arrest individuals before making an arrest, to not maliciously prosecute individuals, and to grant defendants their constitutional right to due process and a fair trial.

96. The City of New York personally and/or through its authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to compliance by employees of the NYPD with the above and below – mentioned constitutional requirements.

97. During all times material to this Complaint, policymaking officials for the NYPD, owed a duty to the public at large and to Plaintiff, which they knowingly and intentionally breached, or implement policies, procedure, customs, practices, training, and/or discipline sufficient to deter and to prevent conduct by his subordinates which violates the aforementioned constitutional rights of criminal suspects or defendants and or other members of the public.

98. The aforesaid constitutionally inadequate policies, procedures, regulations, practices, customs, training, and/or discipline of or by Defendant City of New York and NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the individuals Police Defendants of Plaintiff's rights under the Constitution and Laws of the United States.

99. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries.   City of New York failed to train and supervise their employees in high drug crime areas, which leads to innocent citizens being arrested, like Plaintiff.

100. This claim was made aware to Plaintiff, during Defendant Santiago's testimony at the Plaintiff's trial, where he stated that he was trained by the City of New York.

101. Due to the failure of the City of New York to train, supervise, and their negligent hiring, Plaintiff was subject to cruel and unusual punishment, such failure amounted to deliberate indifference to the rights of Plaintiff's U.S.C.A. Constitution Amendment 4th and 8th.

102. Plaintiff rights were furthered violated by the City of New York for their failure to take corrective actions against errant police officers (Defendants Kreitzberg and Santiago) for their cover-up of material facts.   From this, the City of New York further violated Plaintiff's U.S.C.A. Constitution Amendment 4th, 5th, 6th, 8th, and 14th.

103. Plaintiff also claims that at all times pertinent here to, Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago were acting within the scope of their employment as an officer of New York City Police Department.

18

104. New York City is liable for compensatory damages under the doctrine of respondeat superior for the intentional torts of Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago committed within their employment.

### SIXTH CAUSE OF ACTION

### (New York State Constitution Claim; *False Arrest False Imprisonment: Plaintiff Was Falsely Arrested And Falsely Imprisoned By The Defendants; All Individual Police Defendants)*

105. Plaintiff realleges each of the allegations set forth in paragraphs 1-87.

106. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, used criminal process against Plaintiff in order to intimidate, and cover-up their own wrongdoings and to avoid civil and criminal liability for their own acts.

107. Plaintiff was falsely arrested and falsely imprisoned by the Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, as they had no probable cause for their arrest of Plaintiff. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago, intended to confine Plaintiff, Plaintiff was conscious of the confinement, Plaintiff did not consent to the confinement, and the confinement was not privileged.

108. Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago had no legal justification for their actions, and Plaintiff was deprived of his liberty due to Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago actions.

109. The arrest was without probable cause, as it was a warrantless arrest without a crime being committed, or a witness stating that a crime has been committed. The detention was without justification, and as a proximate result of this malicious abuse of process, false arrest, and false imprisonment, Plaintiff suffered constitutional damages to his U.S.C.A. Constitutional Amendment 4th and 14th, and New York State Law.

**RELIEF**

110. Plaintiff is seeking relief from Defendant Officers Adam Kreitzberg and Defendant Alexander Santiago separately, from the New York City Police Department, 41st precinct, 1035 Longwood Avenue, Bronx New York 10459, for violating the Plaintiff's Constitutional Rights, which are; U.S.C.A. Constitution Amendment 4th, 5th, 6th, 8th, and 14th.

111. Plaintiff is seeking relief for the claims of Conspiracy, Malicious Prosecution, Denial of due process and the right to a Fair trial, and False arrest and false imprisonment, the relief Plaintiff is seeking is:

    A. $1.5 million punitive damages in favor of the Plaintiff;

    B. $2 million compensatory damages in favor of the Plaintiff;

    C. $1.5 million exemplary damages;

    D. $500, 000 thousand for time Plaintiff sent in prison;

    E. $10,000 thousand compensation for Plaintiff payment for trial defense attorney;

    F. Cost of this action, including reasonable attorney fees to Plaintiff; and

    G. Such and other relief as this Court may deem appropriate.

112. Plaintiff is seeking relief from the Defendant New York City for negligent hiring, training, supervising, discipline, and superior liability separately in the following award amounts:

    A. $2.5 million punitive damages in favor of the Plaintiff;

    B. $3 million compensatory damages in favor of the Plaintiff;

    C. $2 million exemplary damages;

    D. $1 million for time Plaintiff sent in prison;

    E. $10,000 thousand compensation for Plaintiff payment for trial defense attorney;

    F. Cost of this action, including reasonable attorney fees to Plaintiff; and

G.  Such and other relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

112. Pursuant to <u>Rule 38 of the Federal Rules of Civil Procedures,</u> Plaintiff demands a

trial by jury.

Sworn to me this __20__ , day

of __April_____, 2015

_____
NOTARY PUBLIC

**JOHN M. FITZAK**
Notary Public - State of New York
No. 01FI6026303
Qualified in Orleans County
My Commission Expires June 14, 2015

Respectfully Submitted,

_____
Shelton C. Jones, 11 B 0687
Plaintiff *pro-se*
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411

To:   Michael A. Cardozo/ Omar Siddiqi
      Corporation Counsel of the City of New York
      Attorney for Defendants
      100 Church Street, Room 3-212
      New York, N.Y. 10007

## AFFIDAVIT OF SERVICE

I, Shelton C. Jones, being duly sworn, deposes and says;

That I am the Plaintiff in the within action, and I reside at Orleans Correctional Facility,

3531 Gaines Basin Road, Albion New York 14411-9199

That on April 20, 2015, I served a true copy of the annexed Amended Complaint by

placing a true copy of same in a sealed post-paid envelope, placing same into a mailbox located

at the above-named Facility, which is under the direct care and custody of Orleans Correctional

Facility, addressed to the below named at the address within the State of New York respectfully

designated by them for the purpose as follows:

- Michael A. Cardozo
  Corporation Counsel of the City of New York
  Attorney for Defendants
  100 Church Street, Room 3-212
  New York, N.Y. 10007


Sworn to me this _20_ , day

of _April_ , 201**5**

_John M. Fitzak_
NOTARY PUBLIC

**JOHN M. FITZAK**
Notary Public - State of New York
No. 01FI6026303
Qualified in Orleans County
My Commission Expires June 14, 20_15_

Respectfully Submitted,

Shelton C. Jones, 11 B 0687
Plaintiff _Pro-se_
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

Shelton C. Jones, 11 B 0687
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*PRO SE* OFFICE
500 PEARL STREET
NEW YORK, N.Y. 10007

RE:    **SHELTON C. JONES V. CITY OF NEW YORK, et al.,**
       **13 CIV. (ALC) (DCF)**

4/20/2015

Dear Pro Se Office:

Enclosed please find the Plaintiff's Shelton C. Jones, Amended Complaint, which was ordered to be submitted on
April 21, 2015.

Also enclosed is the Affidavit of Service, which I state I served the Defendants with a true copy of the Amended
Complaint.

I would like to thank you for your time and attention in this matter.

Very truly yours,

Shelton C. Jones, 11 B 0687
Orleans Correctional Facility

RECEIVED
SDNY PRO SE OFFICE
2015 APR 28 P 12:41



SHELTON C. JONES, 11 B 0687
ORLEANS CORRECTIONAL FACILITY
3531 GAINES BASIN ROAD
ALBION, NEW YORK 14411-9199

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*PRO SE OFFICE*
500 PEARL STREET
NEW YORK, N.Y. 10007