UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x
SHELTON C. JONES,

                              Plaintiff,

       -against-

CITY OF NEW YORK, POLICE OFFICER ADAM
KREITZBERG, and POLICE OFFICER
ALEXANDER SANTIAGO,

                             Defendants.
--------------------------------------------------------------------- x

13-CV-929 (ALC)

OPINION
& ORDER

ANDREW L. CARTER, JR., District Judge:

On February 6, 2013, plaintiff Shelton C. Jones, *pro se*, commenced this action against the City of New York, Officer Adam Kreitzberg, and Officer Alexander Santiago under 42 U.S.C. § 1983 and state law. Defendants filed a motion to dismiss plaintiff's Fourth Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the plaintiff's Fourth Amended Complaint ("FAC") and are construed as true.

On April 12, 2008, plaintiff was dining at a Chinese food restaurant located on 163rd Street in the Bronx, New York. FAC ¶ 7. During this time, defendant officers were patrolling 163rd Street and the surrounding area in search of a person suspected of stealing a cellular phone. *Id.* ¶ 8. Eventually, defendant officers' search brought them to the restaurant where plaintiff was having his dinner. *Id.* ¶ 9. There, the officers began asking customers about the cell phone robbery. *Id.* Apparently, the defendant officers were frustrated that their questioning was failing to yield any leads. *Id.* ¶ 10. As a result, defendant officers became aggressive and began to

1

harass the customers. *Id.* ¶ 11. This included grabbing customers forcefully, placing customers on the wall of the restaurant, and searching them illegally. *Id.* Due to this harassment, several patrons left the restaurant without their food or without placing an order. *Id.*

Eventually, the officers encountered plaintiff while he was eating and asked him questions about the robbery as well. *Id.* ¶¶ 12-13. Plaintiff informed the officers that he did not have any information about a stolen cell phone. *Id.* ¶ 13. Officer Santiago then ordered plaintiff to drop his fork, stand up, and place his hands on the wall. *Id.* ¶ 14. Plaintiff refused to stand and noted that he had not done anything to justify such a search. *Id.* At that point, Officer Santiago grabbed plaintiff by the shirt with both hands and threw him against the wall. *Id.* ¶ 15. Plaintiff was told to "shut the fuck up" and to "keep his hands on the wall." *Id.* Officer Santiago searched through plaintiff's pockets, shoes, and mouth, patting down his body vigorously. Officer Santiago recovered nothing illegal from this search. *Id.*

While Officer Santiago searched plaintiff, Officer Kreitzberg conducted a search of the restaurant, including plaintiff's food, the garbage, and underneath the seats and tables of the restaurant. *Id.* ¶ 17. When Officer Santiago was finished with his search, Officer Kreitzberg grabbed plaintiff by the shoulder, revealed a brown paper bag, and asked plaintiff "do you know what this is in the bag?" *Id.* ¶¶ 18-19. Plaintiff responded that he did not, and then Officer Kreitzberg told Defendant Santiago to arrest plaintiff. *Id.*

Plaintiff was brought to the 41st precinct and was told that he was being arrested for Criminal Sale and Criminal Possession of a Controlled Substance. *Id.* ¶¶ 20-21. There, he was subjected to a strip search and a body cavity search conducted by Officer Santiago. *Id.* ¶ 22. Plaintiff was interrogated by defendant officers and was asked several questions about the robbery of the cell phone. *Id.* ¶ 23. Plaintiff reiterated that he did not know about the cell phone

and maintained his innocence regarding the drug allegations. *Id*. At this point, Officer Kreitzberg threatened to place plaintiff in jail for Criminal Possession and Criminal Sale of a Controlled Substance in the Third Degree if plaintiff did not give the defendant officers information about the robbery. *Id.* ¶ 24. Plaintiff pled his innocence again and Officer Kreitzberg responded, "since you know nothing you are going to jail." *Id.* ¶ 25. Officer Kreitzberg then asked Officer Santiago to place plaintiff in a cell and to start the paperwork. *Id.* Officer Santiago drafted an Arrest Report stating that he saw Plaintiff pass an object to an individual and watched this individual pass plaintiff cash. *Id.* ¶ 26.

Plaintiff was held in the precinct's cell for two to three hours until he was brought to central booking, where he was processed and was presented to a judge. *Id.* ¶ 27. Plaintiff pled "not guilty" to the charges and the judge set bail at $1,500. *Id.* ¶ 28. Plaintiff was held in the Bronx House Holding Jail until he appeared for the grand jury proceedings on April 18, 2008. *Id.* ¶ 28.

Plaintiff testified before the grand jury that he did exchange handshakes with others in the area that night. *Id.* ¶ 30. Officer Santiago testified that he saw plaintiff reach underneath the restaurant table, place a little white wax baggie in another individual's hands, and receive cash retrieved from the individual's pocket. *Id.* ¶ 31. Plaintiff was transported back to the Bronx House Holding Jail until he was released on bail on or around May 4, 2008. *Id.* ¶ 33. Plaintiff also discovered that he had been indicted by the grand jury on or around April 19, 2008. *Id.* ¶ 32.

Later, Officer Santiago testified at a suppression hearing in plaintiff's criminal action and reiterated the testimony he provided to the grand jury. *Id.* ¶ 36. Plaintiff's bail was ultimately revoked and plaintiff returned to the Bronx House Holding Jail. *Id.* ¶ 40. Plaintiff's trial began

on March 3, 2010. *Id.* ¶ 42. Officer Santiago was the government's only witness and, once again, repeated his testimony from the grand jury proceeding. *Id.* ¶¶ 42-44. He noted that he was trained to know when a drug deal occurred and that the plaintiff's alleged handshake with an individual consummated a drug transaction. *Id.* ¶ 42. He also testified that he and Officer Kreitzberg searched the restaurant after arresting plaintiff and found a small brown bag containing little white wax baggies. *Id.* ¶ 44.

However, on cross-examination, Officer Santiago's testimony changed. He ultimately testified that he was unable to see if plaintiff passed any object or controlled substance to an individual. *Id.* ¶ 45. He also said that he did not see any U.S. currency given to plaintiff and that it might have been a green paper or green flier. *Id.* Finally, he revealed that the drugs were not discovered where plaintiff was seated or where plaintiff allegedly reached underneath the table. *Id.*

On March 7, 2010, the jury reached a verdict after four hours of deliberation. *Id.* ¶ 47. Plaintiff was acquitted of all charges. *Id.* Plaintiff initiated this action on February 6, 2013.

## DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purposes of a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the

complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

**False Arrest and False Imprisonment Claims under § 1983**

"Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, the people are 'to be secure in their persons . . . against unreasonable searches and seizures . . . .'" *Maryland v. Pringle*, 540 U.S. 366, 369 (2003) (quoting U.S. Const. amend. IV.). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation removed). "The common law tort of false arrest is a species of false imprisonment, an action 'derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.1995) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). "The right against false imprisonment in the criminal prosecution context extends only to pre-trial detention, rendering false arrest and false imprisonment synonymous." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 n.3 (S.D.N.Y. 2005).

To state a claim of false arrest or imprisonment, a plaintiff must allege that "(1) the defendant intended to confine him [or her], (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Sinagra v. City of New York*, 7 N.Y.S.3d 286, 288 (N.Y. App. Div. 2015) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

The statute of limitations for § 1983 claims is determined by the analogous state statute for personal injury actions. *See Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001). Under New York law, the statute of limitations for § 1983 claims, including false arrest is three years. *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011). Under federal law, a false arrest claim under § 1983 accrues when the false arrest ends, i.e., once the arrestee "becomes held pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). Equitable tolling of the statute of limitations are only applied in "rare and exceptional circumstances" where extraordinary circumstances prevented a plaintiff from timely filing the claim. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).

More than three years elapsed between the point plaintiff posted bail, on or around May 4, 2008, and the date he initiated this action, February 6, 2013.[1] Plaintiff contends that he should

---

[1] Plaintiff argues that defendants have not submitted sufficient proof of the arraignment date and, thus, the Court should preclude defendants from challenging the timeliness of the false arrest and false imprisonment claims. Defendant argues that plaintiff was arraigned on April 12, 2008 and attaches an "Arraignment Worksheet" in support. *See* Siddiqi Decl., Ex. B. Plaintiff challenges this document as incorrect because it lists April 12, 2008 8:15 p.m. as the date and time. Since this is the same time as plaintiff's arrest, plaintiff contends that both events could not have happened at the same time. Upon examination, the Court has a different interpretation of this document. On the photocopied document, a folded corner obstructs the word appearing before "date." Immediately below this information is a heading labeled "Arraignment" and a blank field labeled "Date." These facts suggest that April 12, 2008 8:15 p.m. is in fact the time of arrest and that the date of arraignment is not listed on this document. Despite this deficiency, the Court finds plaintiff's position unavailing. The Court's independent research has not uncovered any support for the proposition that a defendant's failure to establish the specific arraignment date bars him or her from raising a statute of limitations defense. Moreover, the Court can establish an accrual date on alternate grounds. Although an accurate arraignment date is arguably ideal for the Court's analysis, plaintiff specifically alleges several facts to indicate he was "held pursuant to legal process"—the standard under *Wallace*—on a date that bars these claims. According to the Fourth Amended Complaint, plaintiff was officially charged in the presence of a judge, pled "not guilty" to his charges, and had bail set at $1,500 before April 18, 2008. FAC ¶¶ 27-28. Plaintiff would have needed to be initially held pursuant to legal process after February 3, 2010 to have his false arrest and false imprisonment claims be timely. Since this is not the case, the Court finds that the accrual date is well outside the three-year period that preceded the initiation of this action.

be entitled to equitable tolling of his false arrest and false imprisonment based on rare and exceptional circumstances. In sum, plaintiff describes how a jury acquitted him and how the evidence presented by the government—obtained solely from the arrest—was rejected by the jury. Thus, any judgment in plaintiff's favor on his false arrest claim would have undermined the validity of any potential conviction in the criminal proceeding against him. Although plaintiff states that he does not dispute the point at which accrual began, his reasons for equitable tolling mirror the justifications for accruing a § 1983 false arrest claim at the point a favorable verdict is reached. Indeed, plaintiff heavily relies on *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) to buttress his argument. In *Covington*, the Second Circuit expressed concerns that a false arrest claim would collaterally attack state convictions or sentences thus requiring an accrual rule in accordance with the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Covington*, 171 F.3d at 125. Plaintiff draws accurate parallels between his experience and those faced by the plaintiff in *Covington*. Unfortunately for the plaintiff, *Covington* has been overruled by the Supreme Court's decision in *Wallace*, which explicitly found that the *Heck* rule does not apply to false arrest claims. *See Wallace*, 549 U.S. at 393.

Therefore, to the extent plaintiff argues that the false arrest claim should have accrued at a point later than when he was arraigned, his argument fails under *Wallace*. Plaintiff's argument also falls short if he instead seeks to argue that the circumstances preventing a collateral attack on his conviction are rare and exceptional. For one, the *Wallace* court suggested that an individual with a potential false arrest claim is not precluded from filing suit in the middle of a criminal prosecution and obtaining a stay in the civil tort action. *Wallace*, 549 U.S. at 396. While the practicality of this approach is debatable, it is clear that the Court's musing eliminates any basis for equitable tolling in regard to plaintiff's stated circumstances. Furthermore, there is

no need to theorize how the Second Circuit would examine an equitable tolling argument as applied to the facts of *Covington* after *Wallace*. Through an uncanny turn of events, the Second Circuit was presented with this exact situation in 2012 and found that the record in *Covington* "reveal[ed] no extraordinary circumstances that prevented the timely filing of Covington's false arrest claim." *Covington v. New York City Police Dep't*, 471 F. App'x 28 (2d Cir. 2012).

Therefore, plaintiff's claims for false arrest and false imprisonment under 42 U.S.C. § 1983 are dismissed as time-barred.

**Conspiracy Claim**

Plaintiff's second claim seeks relief for the officer defendants' alleged conspiracy to bring false charges against plaintiff. Specifically, plaintiff alleges that defendants agreed to plant drugs on plaintiff, agreed to falsely imprison plaintiff, and agreed to pass false information to the prosecutor, thus forming an agreement to malicious prosecute plaintiff. FAC ¶ 57. Although plaintiff seeks relief for these actions under 42 U.S.C. § 1983, the Court construes this claim to be a cause of action under 42 U.S.C. § 1985(3). Section 1985(3) prohibits any conspiracy to deprive an individual of the equal protection of the laws. Claims under § 1985 are subject to a three-year statute of limitations. *See, e.g., Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). Accrual of § 1985 claims generally begins "once the plaintiff knows of the injury on which the claim is based." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997). However, the statute of limitations do not begin to run upon claims that challenge a conviction unless and until the conviction is invalidated. *See Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (recognizing that *Heck* applies to § 1985 claims); *see also Kevilly v. New York*, 410 F. App'x 371, 374 n.3 (2d Cir. 2010) (summary order) (dismissing conspiracy claims under the *Heck* rationale post-*Wallace*).

8

Defendant argues that the conspiracy claim should be time-barred since accrual began at the date of plaintiff's arraignment. Plaintiff argues that he does not "disput[e] the accrual time." Notably, this concession appears under a heading stating the propriety of equitably tolling the false arrest claim, false imprisonment claim, and conspiracy claim. Given that plaintiff incorrectly grouped his conspiracy claim with the § 1983 claims in his complaint and opposition, it is unclear whether plaintiff intentionally sought to waive an opportunity to establish the moment when the § 1985(3) claim began to accrue. Nonetheless, this Court need not decide this issue as plaintiff fails to state a cognizable § 1985(3) claim.

"To make out a violation of Section 1985(3), a plaintiff 'must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Nguyen v. Bush*, No. 15-CV-641 MKB, 2015 WL 1966296, at *5 (E.D.N.Y. May 1, 2015) (quoting *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir.2013)). With respect to the second element, a plaintiff must show that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (quotation marks and citations omitted). Even under a liberal reading, the Fourth Amended Complaint contains no factual allegations that the alleged conspiracy was motivated by invidious discriminatory animus. Thus, the conspiracy claim against all defendants is dismissed under Rule 12(b)(6).

**State Claims for Malicious Prosecution and False Arrest**

Plaintiff's state law claims for malicious prosecution and false arrest are barred by the statute of limitations. Under New York's General Municipal Law, a claim against New York

City or its employees must be "commenced within one year and ninety days after the happening of the event upon which the claim is based." N.Y. Gen. Mun. § 50-i(1)(c). Claims for false arrest and false imprisonment accrue upon the plaintiff's physical release from custody. *See Nunez v. City of New York*, 762 N.Y.S.2d 384 (N.Y. App. Div. 2003). Claims for malicious prosecution do not accrue until the criminal proceeding terminates in the plaintiff's favor. *See Bumbury v. City of New York*, 880 N.Y.S.2d 44 (N.Y. App. Div. 2009). In order to pursue a claim under the General Municipal law, a plaintiff must make a notice of claim and serve it upon the city within ninety days after the claim arises. *See* N.Y. Gen. Mun. § 502(1)(a). Failure to comply with this notice of claim requires dismissal of the state law claims. *See Rashid v. City of New York*, No. 13 CIV. 8444 RWS, 2015 WL 405438, at *3 (S.D.N.Y. Jan. 30, 2015) (collecting cases).

Plaintiff has not indicated that he has filed a notice of claim pursuant to New York General Municipal Law Section 50-e. In any case, plaintiff initiated his action on February 6, 2013—almost three years after the applicable statute of limitation expired. Plaintiff contends that his claim is timely. He relies on the Supreme Court's decision in *Owens v. Okure* to argue that these state law claims should be governed by the three year statute of limitations governing § 1983 claims. Plaintiff is mistaken. *Owens* stood for the proposition that courts should look to a state's statute of limitations for personal injury actions to determine the statute of limitations for § 1983 claims. 488 U.S. 235, 250 (1988). Applying this principle to New York law, the Court held that the Court of Appeals correctly applied New York's three-year statute of limitations to respondent's *federal* claims. *Id.* at 251. As applied, the filing of state law claims alongside federal claims in a federal forum does not affect, let alone lengthen, the statute of limitations applicable to the state law claims. *See, e.g., Cooper v. City of New Rochelle*, 925 F.

Supp. 2d 588, 601 n.7 (S.D.N.Y. 2013) (acknowledging one year and ninety statute of limitations to state claims in suit where plaintiff also sought relief under § 1983); *see also Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) (dismissing state law claim for malicious prosecution due to lack of compliance with Notice of Claim requirements and denying request to dismiss malicious prosecution claim under § 1983). Accordingly, plaintiff's state law claims are also dismissed.

**Malicious Prosecution Under § 1983**

To state a claim for malicious prosecution under New York law, the plaintiff must prove the following: "(1) the commencement or continuation of a criminal proceeding by the defendant against plaintiff; (2) the proceeding terminated in favor of the plaintiff; (3) lack of probable cause for commencing or continuing the action; and (4) the defendant acted with malice." *Brewton v. City of New York*, 550 F. Supp. 2d 355, 371 (E.D.N.Y. 2008) (citing *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004)). Defendants' brief focuses on the first and third elements. Because neither argument is availing, defendants' motion to dismiss the malicious prosecution claim is denied.

Under New York law, law enforcement officials can initiate prosecution by filing charges or other accusatory instruments. *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (citation omitted). However, "an officer who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding," and the plaintiff must show, instead, that the defendant officer "distorted the process by which plaintiff was brought to trial." *Breeden v. City of New York*, No. 09-CV-4995 ARR JMA, 2014 WL 173249, at *10 (E.D.N.Y. Jan. 13, 2014) (citation omitted). When presenting § 1983 claims against law enforcement officers, plaintiffs may overcome the presumption that a prosecutor

exercises independent judgment in deciding whether to initiate a criminal proceeding by alleging that the officers have either (1) created false information and forwarded it to prosecutors or (2) withheld relevant and material information. *Id.* (citing *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006)).

In the case at bar, plaintiff has alleged that defendant officers wrote a false police report, stating that Santiago observed plaintiff pass an object to an individual and receive U.S. currency, and forwarded this false information to the office of the District Attorney. Plaintiff also alleges that these observations were recanted at trial and only manufactured in retaliation for plaintiff's inability to offer information about the robbery. When construing the facts of the complaint as true, it is evident that plaintiff has sufficiently satisfied the first element of a malicious prosecution claim.

As noted above, the third element to malicious prosecution requires an allegation that the prosecution against the plaintiff occurred in the absence of probable cause. In a malicious prosecution case, the probable cause standard is "slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). Nonetheless, "indictment by a grand jury creates a presumption of probable cause." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted). The Second Circuit has observed that this presumption is rebuttable and may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts, that they have misrepresented or falsified evidence, or otherwise acted in bad faith. *McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (citations and quotation marks omitted).

Defendants argue that plaintiff is incapable of rebutting the presumption of probable cause because doing so would require relying upon the allegedly false testimony that Officer

Santiago's testimony provided to the grand jury. In *Rehberg v. Paulk*, the Supreme Court established that like a witness at trial, a grand jury witness "has absolute immunity from any § 1983 claim *based* on the witness' testimony," even if the witness has committed perjury. ‚ ___ U.S. __, 132 S. Ct. 1497, 1506 (2012) (emphasis added). In reaching this holding, the Court explicitly noted that this immunity extends to law enforcement officers as well. *Id.* The Court need not evaluate whether *Rehberg* precludes the use of grand jury testimony in rebutting probable cause because plaintiff does not solely rely on grand jury testimony.

Under *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) *cert. denied*, 135 S. Ct. 2335 (2015), courts must determine whether a plaintiff can make out the elements of his or her § 1983 claim without resorting to the grand jury testimony when a police officer claims absolute immunity under *Rehberg*. Here, plaintiff alleges that—prior to plaintiff's indictment—defendant officers vindictively drafted a false police report. Thus, plaintiff's malicious prosecution claim is not based on Officer Santiago's grand jury testimony, but rather based on the behavior of defendant officers that laid the groundwork for plaintiff's indictment. *See Coggins*, 776 F.3d at 113.

At the pleading stage, a plaintiff bringing a malicious prosecution after indictment must plead facts that, if proved, would show that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith. *See Rothstein*, 373 F.3d at 283. Plaintiff has made sufficient allegations of fraud and actions taken in bad faith to advance his malicious prosecution claim past defendant's Rule 12(b)(6) motion.

**Qualified Immunity**

Defendant officers also seek qualified immunity from suit for the alleged malicious prosecution. Qualified immunity "shields public officials performing discretionary functions

from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotation marks omitted).

When construing plaintiff's allegations as true, it is clear to reasonable officers in defendants' positions that their participation in plaintiff's prosecution was unlawful. The right to be free from malicious prosecution in the absence of probable cause is a well-established constitutional right. A qualified immunity defense is overcome when a lack of probable cause is properly alleged. *Parker v. City of New York*, No. 09-CV-910 (JG), 2010 WL 1693007, at *4-5 (E.D.N.Y. Apr. 28, 2010); *see also Boyd v. City of New York*, 336 F.3d 72, 75 n.15 (noting that questions of qualified immunity are answered by a probable cause analysis). Therefore, the Court denies defendants' request for qualified immunity at this stage of the proceedings.

### *Monell* Claims Against City of New York

Plaintiff's claim against the City of New York alleges that it was the City's policy and practice to authorize officers to do the following: cover up warrantless arrests without probable cause, conspire with one another to bring false charges, maliciously prosecute, and deny the right to a fair trial. FAC ¶ 90. However, plaintiff may only attempt to establish municipal liability based on the malicious prosecution claim, as the false arrest and conspiracy claims have been dismissed. *See Askins v. Doe. No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Defendants argue that plaintiff has failed to establish a factual basis for imposing liability against defendant City. As set forth below, the Court concludes that plaintiff fails to substantiate his allegations with sufficient facts about his or others' experiences to suggest § 1983 liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).

Under *Monell*, a § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was caused by an official policy or custom. *Id.* at 690, 691. Before establishing a causal connection between the policy or custom and the alleged deprivation of his constitutional rights, a plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426(GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

At the pleading stage, plaintiff need not prove these elements, but must plead them sufficiently to make out a plausible claim for relief. *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015). Boilerplate statements will not suffice. To survive a motion to dismiss, plaintiffs "cannot merely allege the existence of a municipal policy or custom, 'but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Id.* (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). Simply put, conclusory allegations of a municipal custom or practice of tolerating official misconduct, without factual details, cannot establish the existence of such a custom. *Id.*

In order to satisfy the "policy or custom" prong, a plaintiff must allege "(1) a formal policy officially endorsed by a municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with

15

the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted). The policy or custom need not be memorialized in a specific rule or regulation. Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) (citation omitted).

Plaintiff's Fourth Amended Complaint does not allege an endorsed policy or actions taken by government officials responsible for establishing policies. As such, the Court reads this complaint as seeking relief under the third and fourth categories of *Monell* liability: a widespread practice and a failure to train.

Under the third prong, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. Therefore, a plaintiff may establish municipal liability by demonstrating that a [policymaker] 'indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy.'" *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (citations omitted).

Although plaintiff includes general allegations that the policy making officials had notice of the officers' tendencies to conspire to falsify evidence and initiate actions without probable cause, the facts pled are insufficient to meet this prong's requirement. Plaintiff also notes that there are "[n]umerous civil lawsuits, some of which resulted in substantial civil settlements, alleging that police had no probable cause, falsified, exaggerated, or withheld evidence." FAC ¶ 94. To support this, plaintiff lists three actions as examples. Upon examining these actions,

the Court notes that only two of them include allegations of New York City law enforcement officials withholding or falsifying evidence to procure probable cause.[2]

A list of cases may only support an allegation of widespread practice when they are combined with anecdotal evidence and other factual allegations of the alleged policy or custom. *See, e.g., Walker v. City of New York*, No. 14-CV-808 ER, 2015 WL 4254026, at *8-9 (S.D.N.Y. July 14, 2015); *Tieman v. City of Newburgh*, No. 13-CV-4178 KMK, 2015 WL 1379652, at *2 (S.D.N.Y. Mar. 26, 2015), *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009); *c.f. Walker v. City of New York*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (holding, where plaintiff alleged that ten similar complaints had been filed in previous ten years, that "[t]he paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"). Thus, even when combined with the lawsuits that plaintiff cites, his allegations are insufficient to plausibly support an inference of a widespread custom.

Finally, the Court must consider the fourth category of a policy or custom—a failure to train or supervise to such an extent that it amounts to deliberate indifference. In order to properly bring a claim against a municipality under this category, a plaintiff must allege that: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation[;]" (2) "the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation[;]" and (3) "the wrong choice by the city employee will

---

[2] These actions are: *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014); *Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2014); *Walker v. City of New York*, 974 F.2d 293 (2d. Cir. 1992). Only *Poventud* and *Walker* involve allegations against the NYPD.

frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal citations and quotation marks omitted). Where the constitutional violation stems from an activity that is obviously unlawful, plaintiff may establish municipal liability by showing policymakers' deliberate indifference to a history of misconduct. *See Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992). There, plaintiff must allege facts showing that policymakers were aware of a pattern of misconduct by lower officials, but failed to institute appropriate training or supervision. *See id.*

Plaintiff's generalized allegations are insufficient to make out a *Monell* claim under a failure to supervise theory. *See Bradley v. City of New York*, No. 08 Civ. 1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language—that the City 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy . . . .") (internal citations omitted). Because plaintiff's complaint does not sufficiently plead facts to infer a custom or policy under any theory, plaintiff's claims against defendant City of New York are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. In particular, the following claims are dismissed with prejudice: the state and federal claims of false arrest and false imprisonment and the state claim for malicious prosecution. Plaintiff's *Monell* claim and federal claim for conspiracy claim are dismissed without prejudice, with leave to given to replead within thirty days. The motion is denied as to all other claims. The Clerk of Court is respectfully directed to close this motion (ECF No. 99).

**SO ORDERED.**

Dated: New York, New York
March 31, 2016

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**